A93A2393. MATT et al. v. DAYS INNS OF AMERICA, INC.
(443 SE2d 290)

BIRDSONG, Presiding Judge.

Richard and Kellee Matt appeal the grant of summary judgment to Days Inns of America, Inc. The Matts sued Days Inns for damages sustained after Richard Matt was shot in a robbery attempt at the Atlanta Airport Days Inn. The Matts contended that Days Inns' negligence was the proximate cause of Richard Matt's injuries because it failed to provide adequate security and failed to take reasonable precautions to protect him from reasonably foreseeable criminal acts of third persons.

Subsequently, Days Inns moved for summary judgment contending that it was not liable as Richard Matt's injuries were caused by the unforeseeable criminal conduct of a third person. More specifically, Days Inns asserted that although there had been crimes against property in this parking lot and two robberies by force sometime earlier, there had been no substantially similar armed robbery on its premises which would give notice of the possible occurrence of the kind of event that caused Richard Matt's injuries. Ultimately, the trial court granted Days Inns' motion for summary judgment because it found Days Inns had established that there was no genuine issue of material fact on the issue of foreseeability.

The Matts contend that the trial court erred because they introduced evidence that there were 82 crimes committed at the hotel in the three years preceding the attack on Richard Matt. The records show that one robbery occurred in a guest room and 81 other crimes were committed in this Days Inn's parking lot, including one purse snatching one year prior and a robbery by force without the use of a weapon some three years earlier.

In addition, the Matts introduced evidence showing that there are three other airport hotels within a one-quarter mile radius of the Days Inn, and that at one hotel there were 184 parking lot crimes, including five armed robberies, one strong-arm robbery, two rapes, ten assaults, and one kidnapping; another of the hotels had 257 parking lot crimes, including four armed robberies, one strong-arm robbery, one rape, and 26 assaults; and at the other hotel, three total

parking lot crimes including two assaults and one kidnapping. The evidence showed that Days Inns' procedures required that it monitor criminal activity within the area of each Days Inn and adapt its crime prevention plan accordingly.

After their marriage in another state the day before, the Matts drove to Atlanta and, upon their travel agent's recommendation, checked into the Days Inn with plans to take a honeymoon flight to Mexico very early the next morning. The evidence showed that the Matts had never spent the night in an Atlanta hotel before.

The evidence presented showed the shooting occurred in the early morning hours in the first row of cars parked very near the front door of the Inn and that a security guard was seated in a vehicle some 40-50 feet from the place of the shooting. The security guard saw the crime taking place and notified the front desk to call the police because a robbery was in progress.

Testimony from the security guard and Richard Matt showed that the robbery attempt happened very quickly. While Richard Matt opened the trunk of his car to remove some luggage, another car came up behind him. When someone in the car demanded Matt's wallet and Matt did not comply immediately, he was shot. The car then sped away.

The Matts contend that Days Inns failed to exercise its responsibility to protect them on its premises, and that under Days Inns' security procedures, the guard should not have been seated in the car, but should have been patrolling the premises. Further, an expert witness for the Matts, a former chief of security for Days Inns, testified that under the facts known to Days Inns prior to the shooting, a crime such as the one which resulted in the injury to Richard Matt was foreseeable. The trial court found, however, that for criminal activity to be foreseeable, there must have been previous substantially similar criminal acts, and that the "test of 'substantial similarity' is stringent and is met only where the injured party can demonstrate that the prior criminal acts took place in a like manner and under similar conditions as the criminal act in issue." The trial court found that the previous criminal activity at the Days Inn was not substantially similar under this test and, consequently, granted summary judgment. The Matts appeal under OCGA § 9-11-56 (h). *Held*:

Under our law, Days Inns has an obligation as an innkeeper to exercise ordinary care to keep its premises safe for its guests. OCGA § 51-3-1; *Davis v. Garden Svcs.*, 155 Ga. App. 34 (270 SE2d 228). Days Inns, however, relies upon *Savannah College of Art &c. v. Roe*, 261 Ga. 764 (409 SE2d 848) and *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474), for the propositions that before a landowner may be liable for a third party's criminal act there must have been at least one prior substantially similar incident, and further the fact that a

security guard is present does not increase the standard of care.

Although an innkeeper is not an insurer of the safety of the guests, it is bound to exercise ordinary care to protect its guests from unreasonable risks of which the innkeeper has superior knowledge, and if an innkeeper has reason to anticipate criminal acts, it has the duty to exercise ordinary care to guard against injury caused by dangerous characters. *Lau's Corp.*, supra at 492. "[O]rdinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." OCGA § 51-1-2. "Exactly what constitutes 'ordinary care' varies with the circumstances and the magnitude of the danger to be guarded against. Since it is impossible to prescribe definite rules in advance for every combination of circumstances which may arise, the details of the standard must be filled in each particular case. But, to be negligent, the conduct must be unreasonable in light of the recognizable risk of harm." (Citations and punctuation omitted.) *Lau's Corp.*, supra at 493. The Matts, however, may not rely upon Richard Matt's injuries as evidence that Days Inns failed to take reasonable steps to protect him, but must present facts from which a jury could conclude that Days Inns failed to take reasonable measures to protect him against injury. *Lau's Corp.*, supra at 494.

Additionally, the Matts produced evidence from Days Inn's security guard that he did not feel safe patrolling the premises and prior to Matt's shooting had requested permission to carry a weapon, wear a bullet-proof vest, and carry a portable telephone and had also requested that a gate controlling access to the parking lot be installed. Further, there is evidence that a Days Inns security audit conducted some years prior to the Matt shooting had recommended increased security patrols in the parking lot.

Knowledge that the premises subjected its guests to an unreasonable risk of criminal attack is a prerequisite to recovery under OCGA § 51-3-1 and such knowledge may be demonstrated by evidence of the occurrence of prior substantially similar incidents. *Savannah College of Art*, supra at 765. Moreover, under *Lau's Corp.*, supra at 493, evidence of criminal activity in the area in which the hotel is located may be considered on this issue.

Therefore, the question is whether the prior robberies by force in the Days Inn parking lot are substantially similar to the armed robbery in which Richard Matt was shot. In this sense, substantially similar does not mean identical, and it is not a question whether a weapon was used, but whether the prior crimes should have put an ordinarily prudent person on notice that the hotel's quests were facing increased risks. "All that is required is that the prior [incident] be sufficient to attract the [hotel's] attention to the dangerous condition which resulted in the litigated [incident]." *Pembrook Mgmt. v. Cos-*

*saboon*, 157 Ga. App. 675, 677 (278 SE2d 100).

Judge Andrews' dissent proposes adoption of a too narrow definition of "prior substantially similar incidents." *Savannah College of Art*, supra at 765. Under the dissent's definition of the term, not only must the prior incident be the same crime, but the means of inflicting injury must be identical. That is not our law. As may be seen from our Supreme Court's citations to earlier decisions of this court, *Savannah College of Art* did not announce a new or more restrictive standard in these cases. See *Nalle v. Quality Inn*, 183 Ga. App. 119, 120 (358 SE2d 281); *Washington Rd. Properties v. Stark*, 178 Ga. App. 180, 181 (342 SE2d 327); *McCoy v. Gay*, 165 Ga. App. 590, 591 (302 SE2d 130); *McClendon v. Citizens &c. Nat. Bank*, 155 Ga. App. 755, 756 (272 SE2d 592). *Savannah College of Art*, supra at 765. Thus, the test is whether the prior criminal activity was sufficiently substantially similar to demonstrate the landowner's knowledge that conditions on his property subjected his invitees to unreasonable risk of criminal attack so that the landowner had reasonable grounds to apprehend that the present criminal act was foreseeable. The test proposed by the dissent, however, is in application a "free bite" analysis that is not supported by *Savannah College of Art* or any other precedent in this state.

Consequently, it cannot merely be stated that because none of the prior offenses at the Days Inn was an armed robbery with a firearm that none of the events were substantially similar. To reach that result would require the conclusion that a hotel somehow would safeguard its guests differently to protect them from robberies by force and violence than from armed robberies, or protect them differently from armed robbers with firearms than those with knives, or protect guests differently from assaults than from armed robberies. We do not find that the Supreme Court intended such a result in *Savannah College of Art*. Indeed, in *Savannah College of Art* the prior offenses were not crimes of violence against the persons of any of the dormitory residents, but offenses against property or public morals which would not put the college on notice that it was reasonable to expect a sexual attack on a dormitory resident.

In this appeal, however, the record of criminal activity in the parking lots of nearby hotels, including serious crimes against persons, when coupled with the record of criminal activity in its own parking lot (a crime about once every two weeks) was sufficient to create a genuine issue of material fact on whether Days Inns was put on notice that criminal conduct against its guests was foreseeable.

Moreover, although a landowner does not become an insurer of safety by taking some security precautions on behalf of invitees and undertaking some measures to protect patrons does not heighten the standard of care or ordinarily constitute evidence that further mea-

sures might be required (*Lau's Corp.*, supra 494-495), neither does providing security insulate the landowner from liability when the security measures proved to be inadequate. See *Wilks v. Piggly Wiggly Southern*, 207 Ga. App. 842, 844 (429 SE2d 322). Consequently, we find genuine issues present on whether Days Inns' security measures were adequate or whether they were performed in a negligent manner.

The dissent by Judge Blackburn addresses the issue of whether Days Inn was negligent and it concludes that Days Inn cannot be liable in this case because it could not have prevented this crime. Issues of negligence, however, are for the jury, except in plain and palpable cases in which reasonable minds cannot differ. *Lau's Corp.*, supra at 493. This is not such a case. Moreover, this dissent takes an unreasonably restrictive view of the measures an innkeeper might use to protect guests in its parking lot. First, a jury might find that an innkeeper is not limited to actions that might prevent guests from being injured once a crime is in progress. Thus, it is possible a jury might find that the visible presence of a security guard in the parking lot (as Days Inns' own security procedures required) could have prevented this robbery. Further, a jury also might find negligence in that the unarmed security guard remained safely in his vehicle while allowing Richard Matt to face alone the dangers of the parking lot that prompted the security guard to request increased protection for his personal safety. Moreover, a jury might also find that Days Inn was negligent in not maintaining an armed security force, given the dangers in this hotel parking lot, and a jury might also conclude that Days Inn was negligent in not installing a security gate that could have prevented this drive-through robbery attempt. Both of these measures were recommended to Days Inn management by its security guard prior to Richard Matt's shooting, but were then rejected.

Further, pretermitting whether our law allows knowledge of high crime areas to be charged to the public in general, it is hard to conclude that such knowledge could be attributed to a visitor from another state. Moreover, we reject the conclusion that this court is authorized to decide whether Days Inn could do no more to protect its guests, including Richard Matt.

Accordingly, as we find the Matts carried their burden as respondents to Days Inns' motion for summary judgment under the standards announced in *Lau's Corp. v. Haskins*, the trial court erred by granting summary judgment to Days Inns of America.

*Judgment reversed. Pope, C. J., McMurray, P. J., Beasley, P. J., Cooper and Smith, JJ., concur. Andrews, Johnson and Blackburn, JJ., dissent.*

ANDREWS, Judge, dissenting.

The trial judge correctly granted summary judgment in favor of

Days Inns.

The gravamen of Matt's suit for damages is not that someone attempted to rob him in the Days Inn parking lot but that during the attempt he was shot. Under *Savannah College of Art &c. v. Roe*, 261 Ga. 764, 765 (409 SE2d 848) (1991), liability for damages resulting from the shooting depends on whether Days Inn knew or should have known that conditions on its premises subjected Matt to an unreasonable risk of being shot. The requisite knowledge "may be demonstrated by evidence of the occurrence of prior substantially similar incidents." Id. at 765. Accordingly, in the absence of any evidence in this case that Days Inn otherwise knew about the present incident, in order to prove that Days Inn had the requisite knowledge, the evidence must show the occurrence of prior substantially similar incidents on the premises. Id.; *Woods v. Kim*, 207 Ga. App. 910 (429 SE2d 262) (1993).

The record in this case shows that, prior to the present shooting, there had been two previous unarmed robberies and some unspecified crimes against property on the Days Inn premises. Conceding that there were no prior shootings or even armed robberies on the premises, the majority, nevertheless, concludes that the present attempted armed robbery and shooting was "substantially similar" to the prior unarmed robberies. Instead of focusing on the obvious dissimilarities between the prior unarmed robberies and the present shooting, the majority analyzes *Savannah College of Art's* "substantially similar" requirement by focusing instead on "whether the prior crimes should have put an ordinarily prudent person on notice that the hotel's guests were facing increased risks," majority, p. 794, and by relying on a pre-*Savannah College of Art* case for the proposition that " '[a]ll that is required is that the prior (incident) be sufficient to attract the (hotel's) attention to the dangerous condition which resulted in the litigated (incident).' " Majority, p. 794. The majority concludes that "the record of criminal activity in the parking lots of nearby hotels, including serious crimes against persons, when coupled with the record of criminal activity in its own parking lot (a crime about once every two weeks) was sufficient to create a genuine issue of material fact on whether Days Inns was put on notice that criminal conduct against its guests was foreseeable." Majority, p. 795.

The "substantially similar" test set forth in *Savannah College of Art* involves a straightforward, direct comparison of any prior crimes on the premises to the present criminal incident. In establishing a clearly stated (if not always easily applied) limit to liability, *Savannah College of Art* attempts to lend at least some degree of predictability to the duty of a premises owner to protect invitees from the intervening criminal acts of third persons. The majority has expanded the limits of potential liability under the *Savannah College of Art*

test by finding "substantial similarity," not by a direct comparison of the prior crimes on the premises to the present incident, but by a sort of totality of the circumstances test stated in terms of whether the prior unarmed robberies and other crimes at the Days Inn, located in a "high crime" area where armed robberies had occurred at other businesses, were sufficient to show that Days Inn knew or should have known of an unreasonable risk that Matt might be shot in an attempted armed robbery.

The focus should be on a direct comparison of any previous criminal acts on the premises to the present criminal incident. *Savannah College of Art* makes absolutely clear that a premises owner's knowledge that his business is located in a "high crime" area, where crimes have been committed at other locations, does not establish a duty to protect invitees from similar crimes which might be committed on the owner's premises. The fact that numerous crimes similar to the present criminal attack may have been committed at other locations in the area is irrelevant if there is no evidence of prior substantially similar crimes on the Days Inn premises. *Savannah College of Art*, supra at 765-766, n. 2. Under *Savannah College of Art*, if the prior crimes on the Days Inn premises were not "substantially similar" to the present criminal incident, Days Inn is presumed not to have the requisite knowledge and there would be no corresponding duty to protect Matt from the attack and no liability for his injuries. Directly compared, the two unarmed robberies and other crimes against property, which previously occurred on the Days Inn premises, were not "substantially similar" to the present shooting.

This test should be strictly applied as a necessary limit to a premises owner's duty to protect invitees from the intervening criminal acts of third persons. Unless this duty is strictly defined and limited, business owners will be burdened with the uncertain duty of preventing criminal activity against their patrons, which government and law enforcement have been unable to prevent. A proprietor is not the insurer of his invitees' safety and, despite the dangerous area in which his business may be located, it is not the proprietor's duty to provide to invitees what amounts to police protection from violent crime in the area.

As to the claim that security was inadequate, knowledge of a dangerous condition giving rise to the present shooting "would be necessary, in order to show the existence of even an initial duty on the part of [Days Inn] to provide preventive security measures." *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874, 877 (392 SE2d 535) (1990). Since there were no prior "substantially similar" attacks on the premises, there was no such knowledge and no duty to provide security adequate to protect against this kind of attack. *Woods*, supra at 911. Additionally, "[t]here was no evidence that any security ef-

forts undertaken by [Days Inn] were otherwise below a reasonable standard of care, made the situation worse by increasing the danger, misled [Matt] into the belief that the danger had been removed, or deprived [Matt] of the possibility of help from other sources." Id. at 911; *Lau's Corp. v. Haskins*, 261 Ga. 491, 494-495 (405 SE2d 474) (1991).

Accordingly, Days Inns was entitled to summary judgment in its favor.

I am authorized to state that Judge Johnson joins in this dissent.

BLACKBURN, Judge, dissenting.

In the present case, the robbery attempt and shooting happened very quickly. The perpetrator pulled up to the victim in the hotel parking lot and shot the victim without getting out of the car. The security guard was seated in a vehicle some 40-50 feet from the location of the incident. It was an unfortunate incident, but it was "not of such a nature as to reasonably allow the proprietor to intercede, warn its invitees, or otherwise act to prevent injury to [the victim]." *Taylor v. Atlanta Center, Ltd.*, 208 Ga. App. 463, 466 (430 SE2d 841) (1993). The concept of foreseeability necessarily requires that Days Inn have such knowledge that it could reasonably anticipate that *the subject crime* would likely occur, and given that, the anticipated crime must be of such a nature that they could have reasonably prevented same. Liability must be based on fault, and there could be no fault absent the presence of both of these elements. To say otherwise is to make the proprietor the insurer of the injured party, which the law does not allow. *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1) (405 SE2d 474) (1991). Therefore, I support the trial court's grant of Days Inns' motion for summary judgment.

The evidence presented tended to show that the Atlanta Airport Days Inn is located in a high crime area with which knowledge plaintiff would be charged as a member of the general public. Days Inn had no greater ability or duty to anticipate *specific* intentional criminal acts by unknown persons than did the plaintiff. The presence of a security guard in the parking lot within 40 feet of the crime scene who did not have time to intercede clearly shows that Days Inn was prevented from protecting the plaintiff by the speed and nature of the attack, which it could not have reasonably anticipated. If the security guard, as provided, was not adequate, then at what density must the proprietor staff the premises? Absent a one-on-one ratio of security guard to invitee, how could Days Inn have prevented this incident? Presidents, with scores of armed secret service agents, have been assassinated by determined assailants. Surely we cannot require a heightened security for each guest at a hotel. This requirement would be unreasonable as a matter of law, would make the cost of providing

hotel services prohibitive, and would result in a total abandonment of large geographic areas by businesses of every description.

DECIDED MARCH 18, 1994 —
RECONSIDERATION DENIED APRIL 1, 1994 —

*Bauer & Deitch, Craig T. Jones*, for appellants.
*Hicks, Casey & Young, William T. Casey, Jr.*, for appellee.