### A10A0862. NARAINE v. CITY OF ATLANTA.
(703 SE2d 31)

MILLER, Chief Judge.

Bhaugpattie Naraine slipped on an icy sidewalk and fell. She sued the City of Atlanta ("City"), alleging that it was negligent in maintaining a fountain and failing to remove ice from the sidewalk. The City moved for summary judgment, which the trial court granted. Naraine appeals, arguing that the trial court erred in failing to find (i) that the City negligently performed its ministerial duties of maintaining its fountain and streets, and (ii) that material issues of fact exist as to whether the City had notice of the icy sidewalk. Discerning no error, we affirm.

"A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Roquemore v. City of Forsyth*, 274 Ga. App. 420 (617 SE2d 644) (2005). If no issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is proper. OCGA § 9-11-56 (c).

So viewed, the evidence shows that on the morning of December 6, 2006, Naraine was exiting a bus which had stopped at the

intersection of Luckie Street and Peachtree Street, or Margaret Mitchell Square ("Square"). As she stepped off the bus, she slipped on a patch of ice on the sidewalk and fell to the ground, sustaining injuries to her ankle. A witness observed water blowing from a nearby fountain onto the street. The fountain, which is owned and operated by the City, is located in the Square.

At some point before the incident, the City received an emergency call regarding ice on the fountain. Allen Kirkland, a City maintenance employee, responded to the call and turned off the valve. Prior to the incident, the City had not received any reports or complaints of any ice falling from the fountain; leakage of water flowing from the fountain onto the sidewalk or streets and freezing; or repairs made to the area of Naraine's fall.

The trial court granted summary judgment in favor of the City, finding that the City's maintenance of its fountain was a governmental function, to which it was entitled to sovereign immunity.

1. Naraine contends that the trial court erred in failing to find that the City negligently performed its ministerial tasks of maintaining the fountain and its streets and sidewalks. We disagree.

(a) City's maintenance of its fountain. Municipalities "are not liable for negligence in the performance of governmental, as opposed to their ministerial functions." *Gooden v. City of Atlanta*, 242 Ga. App. 786, 787 (531 SE2d 364) (2000). In other words, "[s]overeign immunity of municipal corporations is waived when they negligently perform ministerial duties[.]" (Citations omitted.) *Koehler v. City of Atlanta*, 221 Ga. App. 534, 535 (472 SE2d 91) (1996); OCGA § 36-33-1 (b). We have held that the operation of a public recreational swimming facility or a museum for the public's benefit, rather than to derive a profit, is a governmental function. *Gooden*, supra, 242 Ga. App. at 788; *Koehler*, supra, 221 Ga. App. at 535 (operation of a city museum, the Cyclorama, for the public's benefit, was a governmental function).

In support of its motion for summary judgment, the City produced the affidavit of Ken Gillette, its director of parks, who stated that the fountain is located in the Square; the Square is operated "for the public good and not as a proprietary function"; and the City "does not charge a fee for use of [the Square]." Inasmuch as Naraine was seeking to benefit from the waiver of sovereign immunity, she had the burden of proof. *Koehler*, supra, 221 Ga. App. at 535. Specifically, Naraine was required to come forward with evidence that the Square, of which the fountain was a part, "was operated primarily as a source of revenue, rather than as a place of public recreation." (Citation omitted.) Id. at 535. This Naraine failed to do.

Instead, Naraine argued that, because the City's duties were "specific in nature and required a schedule for its maintenance of the

fountain," the City negligently performed its ministerial duty of turning off the fountain during the winter months. Where, as here, Naraine sued the City only, rather than its employees, we need not consider whether the City's duty to turn off the fountain during the winter months was a discretionary or ministerial function. Compare *Happoldt v. Kutscher*, 256 Ga. App. 96, 99 (1) (567 SE2d 380) (2002) (in suit filed against public officer in his or her official capacity, in deciding whether official immunity applies, the "single overriding factor is whether the specific act from which liability arises is discretionary or ministerial") (punctuation and footnote omitted). Moreover, Naraine has failed to cite to any authority, and we are aware of none, that states that maintenance of a fountain in a public park is a ministerial function.

(b) City's maintenance of its streets and sidewalks. Naraine alleged in her complaint that the City "caused the water from the fountain to run [o]nto the street where [Naraine] fell[,] . . . that the water from the fountain was allowed to freeze in the street and form a hazardous sheet of ice[,]" and that such ice "caused [Naraine] to slide and fall." It is well settled that

> [a] municipality is relieved of any and all liability resulting from or occasioned by defects in the public roads of its municipal street system when it has not been negligent in constructing or maintaining the same or when it has no actual notice thereof or when such defect has not existed for a sufficient length of time for notice thereof to be inferred.

OCGA § 32-4-93 (a); *Roquemore*, supra, 274 Ga. App. at 423 ("municipalities generally have a ministerial duty to keep their streets in repair, and they are liable for injuries resulting from defects after actual notice, or after the defect has existed for a sufficient length of time for notice to be inferred") (citation and punctuation omitted); *City of Vidalia v. Brown*, 237 Ga. App. 831, 833 (1) (516 SE2d 851) (1999) (city sidewalks are deemed part of the streets under OCGA § 32-4-93 (a)). See also *Roquemore*, supra, 274 Ga. App. at 423 (defects covered by OCGA § 32-4-93 (a) include objects adjacent to the street).

Gillette averred to the best of his knowledge and belief in his affidavit that, prior to the incident, "there had been no complaints of any problems associated with the area of [Naraine's fall]," and "there have been no repairs made to the area [of Naraine's fall]." Gillette further averred that the Parks Department had not received any prior complaints or reports "of a leak of water emanating from the fountain located in [the Square]." Arthur Calbreath and Allen Kirkland, the City's skilled service department manager and main-

tenance employee, respectively, similarly deposed that the City had no prior notice of any water flowing from the fountain onto the streets and/or freezing.

As evidence of the City's constructive notice of an icy condition on its streets, Naraine points to Kirkland's testimony that, at some point prior to the incident the City received an emergency call about ice on the fountain, and Kirkland "shut the valve off to make sure that if it decides to dissolve, no more extra water will be spilled out." This evidence fails to establish that there was any spillage of water from the fountain onto the streets or any defect in the fountain. Here, Kirkland remedied any potential problem by turning off the valve.

Naraine also argues that the City's lack of a reasonable inspection procedure for the fountain at the time of the incident creates a jury issue as to the City's constructive knowledge that the fountain caused spillage of water onto its streets which led to her fall. Even assuming that a municipality was required to have a reasonable inspection procedure for its fountain and that it failed to utilize it (see *Somers v. M.A.U., Inc.*, 289 Ga. App. 731, 732 (658 SE2d 242) (2008) (in slip and fall action against restaurant owner, constructive knowledge may be inferred from evidence that owner did not use reasonable care in inspecting the premises)), Naraine failed to come forward with evidence of a defect in the fountain or that one would have been discovered during a reasonable inspection of it.

Even were it otherwise, given the absence of evidence of any accidents occurring in the area of Naraine's fall due to ice or spillage of water from the fountain into the area at issue, the City had no duty to inspect the fountain at the time of the incident. See *Andrews v. City of Macon*, 191 Ga. App. 745, 748 (3) (382 SE2d 739) (1989) (finding no duty to inspect water lines absent actual or constructive notice of a leak).

Moreover, the record fails to establish the cause in fact of the ice patch, i.e., whether it was caused by melting snow on a December day in which temperatures can dip below 32 degrees Fahrenheit or water from the fountain. See *Speaks v. Rouse Co. of Ga.*, 172 Ga. App. 9, 10 (321 SE2d 774) (1984) ("Municipalities are not required to remove ice which forms from melting snow, except where obvious hazards are created by means other than the natural accumulation.") (citations omitted). Naraine having failed to "point to specific evidence giving rise to a triable issue" as to the City's actual or constructive notice of any defect in the fountain or its streets and sidewalks (*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); OCGA § 9-11-56 (e)), no jury issues remain as to whether the City waived its sovereign immunity. *Roquemore*, supra, 274 Ga. App. at 423; *Koehler*, supra, 221 Ga. App. at 535.

2. In light of our holding above and the undisputed fact that Kirkland shut off the fountain prior to the incident, no genuine issues of fact exist as to whether the City actually or constructively knew of an icy condition in the area of Naraine's fall by not turning off the fountain during the winter months. *Thompson v. City of Atlanta*, 274 Ga. App. 1, 4 (1) (616 SE2d 219) (2005) (court declined to find that city had notice of flooded intersection where city only received one complaint of drainage problems three years before the accident and there were no complaints of vehicle accidents); *Andrews*, supra, 191 Ga. App. at 747 (2) (finding no constructive notice where evidence was devoid of any street repairs at or near the site of appellant's accident and there were no similar defects or incidents).

Accordingly, we affirm the grant of summary judgment in favor of the City.

*Judgment affirmed. Phipps, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 22, 2010.

*Horatio O. Edmondson, Yemane K. Clarke*, for appellant.
*Laura Sauriol-Gibris, Tamara N. Baines, Tressa P. Marryshow*, for appellee.